UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER WROTH, et al., | Case No. 17-cv-05339-JST |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION FOR A NEW TRIAL AND DENYING MOTION FOR JUDGMENT AS A MATTER OF LAW AS MOOT** |
| CITY OF ROHNERT PARK, et al., | |
| Defendants. | Re: ECF Nos. 143, 166, 191 |

Before the Court are Defendant City of Rohnert Park's renewed motion for judgment as a matter of law and its motion to alter or amend the judgment or, in the alternative, for a new trial. ECF Nos. 143, 166, 191.  The Court will grant the motion for a new trial and deny the motion for judgment as a matter of law as moot.

I.      BACKGROUND

A.      Factual Background

The details of this case are set forth more fully in the Court's prior order granting in part and denying in part summary judgment.  ECF No. 78.  In short, on May 12, 2017, City of Rohnert Park police officers attempted to arrest Branch Wroth.  Wroth died during the interaction.  His parents, Christopher and Marni Wroth ("Plaintiffs"),[1] filed this suit, alleging Fourteenth Amendment violations against five of the officers ("Officer Defendants") – Officer David Wattson, Officer Sean Huot, Officer Matt Huot, Officer Michael Werle, and Sergeant Eric Matzen – and the City of Rohnert Park ("Rohnert Park").

---

[1] For the sake of clarity, the Court refers to Christopher and Marni Wroth as "Plaintiffs" and Branch Wroth as "Wroth."

United States District Court
Northern District of California

United States District Court
Northern District of California

### B.      Procedural History

On September 14, 2017, Plaintiffs filed this action under 42 U.S.C. § 1983, raising claims that (1) the Officer Defendants unlawfully deprived them of their familial relationship with Wroth, in violation of the First and Fourteenth Amendments; and (2) Rohnert Park was also liable because its Director of Public Safety ratified the Officer Defendants' conduct.  ECF No. 1.  Plaintiffs amended their complaint on June 19, 2018.  ECF No. 39.  On December 7, 2018, the Court granted Plaintiffs leave to file the operative second amended complaint ("SAC") to add a failure-to-train theory of liability against Rohnert Park.  ECF No. 58.

On March 1, 2019, Defendants filed a motion for summary judgment.  ECF No. 65.  On April 22, 2019, the Court granted the motion as to the Officer Defendants, holding that they were entitled to qualified immunity.  ECF No. 78 at 20-22.  The Court denied the motion as to Rohnert Park.  *Id.* at 24-27.  The case then proceeded to trial, beginning on June 4, 2019.

At trial, Rohnert Park repeatedly argued that there could be no liability on its part unless the jury first found that the individual officers had committed a constitutional violation.  Its proposed verdict form, for example, required a finding that the officers caused Wroth's death before the jury could consider whether inadequate training also caused the injury.  ECF No. 102 at 2-3.  The Court rejected this approach.  ECF No. 153.  It also overruled Rohnert Park's request to include an underlying-violation jury instruction for the failure-to-train claim.  Record of Trial ("RT") at 1172:8-12; 1332:19-1336:17.  Rohnert Park also objected to a failure-to-train instruction that stated that Plaintiffs did "not also have to prove that the individual officers were deliberately indifferent."  *See* ECF No. 145 at 23; RT at 1332:19.  The Court overruled this objection.  RT at 1333:13-21; 1336:15-17.

The issue came up again during deliberations when the jury sent out a note requesting a definition of "moving force," which was used in both the ratification and failure-to-train claims.[2]

---

[2] The second question on the verdict form's ratification claim read:  "Was the deliberate indifference of David Sittig-Watson, Sean Huot, Matt Huot, Mike Werle, and/or Eric Matzen the moving force behind the death of Branch Wroth?"  ECF No. 153 at 1.  The seventh question on the failure-to-train claim read:  "Was the failure of the City of Rohnert Park to provide adequate training the moving force behind the death of Branch Wroth?"  *Id.* at 2.

ECF No. 192 at 7.  After Rohnert Park again requested that the Court give its proposed jury instructions, RT at 1479:7-1480:12, the Court instead provided the following written response to the jury's question:

> In order to find that the deliberate indifference of David Sittig-Watson, Sean Huot, Matt Huot, Mike Werle, and/or Eric Matzen was the "moving force" behind the death of Branch Wroth, and/or that the failure of the city of Rohnert Park to provide adequate training was the "moving force" behind the death of Branch Wroth, you must find that one or both of these things was a substantial factor in causing his death.  A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm.  It must be more than a remote or trivial factor.  It does not have to be the only cause of the harm.

ECF No. 193 at 7.

On June 20, 2019, the jury returned its verdict.  ECF No. 158.  On Plaintiffs' ratification claim, the jury found as follows:

> 1. Were David Sittig-Watson, Sean Huot, Matt Huot, Mike Werle, and/or Eric Matzen deliberately indifferent to the rights of Christopher and Marni Wroth?
>
> Yes __X__   No _____
>
> . . . .
>
> 2. Was the deliberate indifference of David Sittig-Watson, Sean Huot, Matt Huot, Mike Werle, and/or Eric Matzen the moving force behind the death of Branch Wroth?
>
> Yes _____   No __X__

ECF No. 158 at 1.  Because the jury found that the Officer Defendants' deliberate indifference did not cause Wroth's death, Plaintiffs' ratification claim failed.

On the failure-to-train claim, the jury found as follows:

> 4. Did the City of Rohnert Park fail to provide adequate training to David Sittig-Wattson, Sean Huot, Matt Huot, Mike Werle, and/or Eric Matzen?
>
> Yes __X__   No _____
>
> . . . .
>
> 5. Were the training policies of the City of Rohnert Park inadequate to train its police officers to handle the usual and

recurring situations with which they must deal?

Yes __X__   No _____

. . . .

6.    Was the City of Rohnert Park deliberately indifferent to the known or obvious consequences of its failure to train its police officers adequately?

Yes __X__   No _____

. . . .

7.    Was the failure of the City of Rohnert Park to provide adequate training the moving force behind the death of Branch Wroth?

Yes __X__   No _____

*Id.* at 2.  The jury awarded each Plaintiff $2 million in damages.  *Id.* at 3.

On June 11, 2019, Rohnert Park filed a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a).  ECF No. 143.  The Court denied the motion without prejudice, reserving judgment on the issues presented.  RT at 1183 (citing Fed. R. Civ. P. 50(b) advisory committee's note to 1991 amendment).

After the jury's verdict, the parties stipulated to a post-trial briefing schedule in which Plaintiffs would respond directly to Rohnert Park's previously-filed Rule 50(a) motion.  ECF No. 165.  On June 28, 2019, the Court approved the stipulation and deemed Rohnert Park to have renewed its prior motion as a timely filed Rule 50(b) motion.  ECF No. 166.  The Court entered judgment on July 18, 2019.  ECF No. 171.  The Court heard argument on Rohnert Park's Rule 50(b) motion on August 8, 2019.  ECF No. 189.

On August 15, 2019, Defendant timely filed a Rule 59 motion to alter or amend the judgment or, in the alternative, for a new trial.  ECF No. 191.  The Court held a hearing on the motion on October 9, 2019, ECF No. 198, and ordered a sur-reply that was filed on November 6, 2019, ECF No. 200.  The Court now reviews the Rule 50(b) and Rule 59 motions together.

## II.    RULE 59 MOTION

Rohnert Park's Rule 59 motion argues that the jury returned an inconsistent verdict as a

United States District Court
Northern District of California

4

result of improper jury instructions and verdict form.  ECF No. 191; Fed. R. Civ. P. 59.  Rohnert Park first requests that the Court amend the judgment under Rule 59(e) to "correct manifest errors of law or fact."  ECF No. 191 at 7 (quoting *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011)).  Should the Court decline to do so, Rohnert Park alternatively requests that it grant a new trial under Rule 59(a).  *Id.* at 10.

### A.    Legal Standard

A motion for reconsideration under Federal Rule of Civil Procedure 59(e) "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the law." *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (per curiam) (emphasis omitted) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).  Where a jury gives "seemingly inconsistent answers to special verdict interrogatories," a trial court "has a duty to attempt to harmonize" these answers.  *Duk v. MGM Grand Hotel, Inc.*, 320 F.3d 1052, 1058 (9th Cir. 2003).  "A court may not disregard a jury's verdict and order a new trial until it 'attempt[s] to reconcile the jury's findings, by exegesis if necessary.'"  *Id.* at 1058-59 (quoting *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 119 (1963)).  "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way" by amending the judgment.  *Id.* at 1059 (quoting *Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962)).

A court may grant a new trial under Federal Rule of Civil Procedure 59(a)(1) "if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice."  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (citing *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)).  "[E]rroneous jury instructions, as well as the failure to give adequate instructions, are also bases for a new trial."  *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990).  A judge should not grant a new trial unless "left with the definite and firm conviction that a mistake has been committed."  *Landes Constr. Co., Inc. v. Royal Bank of Can.*, 833 F.2d 1365, 1372 (9th

1    Cir. 1987) (citation and internal quotation marks omitted).

2         "An error in instructing the jury in a civil case requires reversal unless the error is more

3    probably than not harmless."  *Dang v. Cross*, 422 F.3d 800, 811 (9th Cir. 2005) (quoting

4    *Caballero v. City of Concord,* 956 F.2d 204, 206 (9th Cir. 1992)).  "[W]e presume prejudice

5    where civil trial error is concerned and the burden shifts to the [non-moving party] to demonstrate

6    'that it is more probable than not that the jury would have reached the same verdict' had it been

7    properly instructed."  *Id.* (quoting *Galdamez v. Potter,* 415 F.3d 1015, 1025 (9th Cir. 2005)).  "In

8    evaluating jury instructions, prejudicial error results when, looking to the instructions as a whole,

9    the substance of the applicable law was [not] fairly and correctly covered."  *Id.* at 805 (quoting

10   *Swinton v. Potomac Corp.,* 270 F.3d 794, 802 (9th Cir. 2001) (alteration in original)).

11        In evaluating post-trial motions, the Court "reviews the jury instructions and the verdict

12   form together to determine whether the jury was misled."  *Boggs v. Lewis*, 863 F.2d 662, 666 (9th

13   Cir. 1988).

14        **B.    Discussion**

15             **1.    Error**

16        Rohnert Park argues that the Court committed clear error by permitting the jury "to reach

17   the training issue despite its finding that no underlying constitutional violation occurred."  ECF

18   No. 191 at 9.  It alleges that there was no constitutional violation because the jury "specifically

19   found that the officers' conduct was not the moving force behind Branch Wroth's death."  *Id.* at 6.

20   After the jury made this finding, Rohnert Park contends, it should not have been permitted to

21   consider Plaintiffs' failure-to-train claim.  *Id.*  Rohnert Park thus requests that the court "amend

22   the judgment to reflect that defendant was not liable on the training claim."  *Id.* at 9.

23        The Court begins by reviewing the relevant law.  As a matter of first principles, a

24   municipality may only be held liable under § 1983 where a deprivation of rights has occurred.  42

25   U.S.C. 1983 ("Every person who . . . subjects, or causes to be subjected, any citizen of the United

26   States or other person within the jurisdiction thereof to the *deprivation of* any rights, privileges, or

27   immunities secured by the Constitution and laws, shall be liable . . . .") (emphasis added); *see also*

28

1   *City of Canton*, *Ohio v. Harris*, 489 U.S. 378, 385 (1989) ("[O]ur first inquiry in any case alleging

2   municipal liability under § 1983 is the question whether there is a direct causal link between a

3   municipal policy or custom *and the alleged constitutional deprivation*.") (emphasis added).  The

4   Supreme Court articulated this principle in *City of Los Angeles v. Heller*, 475 U.S. 796, 799

5   (1986), where it held that *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978) does

6   not authorize "the award of damages against a municipal corporation based on the actions of one

7   of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm."

8   *See also Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996) ("[A]n individual may

9   recover under § 1983 only when his federal rights have been violated."); *Scott v. Henrich*, 39 F.3d

10   912, 916 (9th Cir. 1994) ("While the liability of municipalities doesn't turn on the liability of

11   individual officers, it is contingent on a violation of constitutional rights.").

12   A city can, of course, cause a constitutional deprivation directly rather than by failing to

13   adequately train or supervise its officers.  In that situation, there is no need for a plaintiff to prove

14   an underlying violation because the city is not acting through an intermediary.  For example, in

15   *Grossman v. City of Portland*, 33 F.3d 1200 (9th Cir. 1994), a case cited by Plaintiffs, the city

16   passed an unconstitutional ordinance that directly caused the plaintiff's injury.  *Id.* at 1203 ("Dr.

17   Grossman's constitutional claim does not stem from an absence of probable cause to arrest, but

18   from the alleged unconstitutionality of the ordinance justifying the arrest.").  The Supreme Court

19   has distinguished this kind of direct liability, where a "plaintiff claims that a particular municipal

20   action *itself* violates federal law," from indirect municipal liability, where "a plaintiff claims that

21   the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do

22   so."  *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404-05 (1997).  In the

23   former category of cases, establishing "fault and causation is straightforward."  *Id.* at 404.  But in

24   the latter, "rigorous standards of culpability and causation must be applied."  *Id.* at 405.  The

25   *Bryan County* Court held up *City of Canton* as an example of indirect municipal liability.  *Id.* at

26   407.

27   Plaintiffs rightly note that a municipality can be held liable for inadequately training

28

United States District Court
Northern District of California

7

United States District Court
Northern District of California

officers who themselves are not liable because they have received qualified immunity.  ECF No. 196 at 9 (citing *Palmerin v. City of Riverside*, 794 F.2d 1409, 1415 (9th Cir. 1986)).  But in that situation, the reason the officers escape liability is not that there was no constitutional violation, but that the law was not clearly established.  *See Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 603 (9th Cir. 2019) ("[A] municipality may be liable if an individual officer is exonerated on the basis of the defense of qualified immunity, because even if an officer is entitled to immunity a constitutional violation might still have occurred.") (citation omitted).  Those are not the facts here.  Rather, the jury found that the officers did not cause a constitutional injury to Plaintiffs.  Similarly, in the case Plaintiffs cite, the district court dismissed *Monell* claims against a municipality because a jury had found that the officers did not violate the plaintiffs' rights. *Palmerin*, 794 F.2d at 1410.  The Ninth Circuit affirmed this decision because "a *Monell* claim . . . is not possible, by its own terms, if the officers acted constitutionally."  *Id.* at 1415.

Plaintiffs also cite language from *City of Canton* that is not helpful to them.  In that case, the plaintiff brought a Fourteenth Amendment claim against a municipality for inadequate medical treatment while in custody.  The Court held that a city may be liable for inadequately training its officers if the failure to train amounts to "deliberate indifference to the rights of persons with whom the police come into contact."  489 U.S. at 388.  The Court also held that "for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury," i.e., that the lack of training must have "actually caused the police officers' indifference to [the plaintiff's] medical needs."  *Id.* at 391.  Plaintiffs point to this language to argue that Rohnert Park may be held liable because the jury found that its failure to adequately train its officers was "the moving force" behind Wroth's death.  ECF No. 196 at 6-7.  But the purpose of the Supreme Court's language was to require that a § 1983 plaintiff show a causal connection between a municipality's policy and the constitutional injury inflicted by officers before the municipality could be liable.  *City of Canton*, 489 U.S. at 389 (stating that "a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation'") (quoting *Polk County. v. Dodson*, 454 U.S. 312, 326 (1981)).  The

1    Supreme Court was not asked to, and did not, establish a ground for municipal failure-to-train

2    liability untethered to any underlying constitutional violation.

3           Plaintiffs cite two additional Ninth Circuit cases, neither of which controls the question

4    now before the Court.  In *Fairley v. Luman*, 281 F.3d 913 (9th Cir. 2002), the court affirmed a jury

5    verdict holding the city of Long Beach liable for incarcerating the plaintiff on a warrant for his

6    twin brother even though the jury had found that the individual officers did not violate the

7    plaintiff's rights.  ECF No. 196 at 7.  But the *Fairley* court viewed that case as a species of direct

8    municipal liability, where the "collective inaction of the Long Beach Police Department" directly

9    caused the plaintiff's injuries.  281 F.3d at 917.  The "constitutional deprivation – the touchstone

10   of § 1983 liability – was a consequence of city policy," not the officers' actions.  *Id.*  Plaintiffs

11   also cite *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992), which noted that a city "might be

12   held liable for improper training or improper procedure even if [the individual officer] is

13   exonerated, since they put an officer on the street who is so badly trained and instructed he lets his

14   baton be taken away from him and then has to kill an unarmed civilian to save his own life."

15   However, not only is that language dicta, it also conflicts with numerous Ninth Circuit cases

16   holding that an underlying constitutional violation is necessary for indirect municipal liability.

17   *See Quintanilla*, 84 F.3d at 355; *Scott v. Henrich*, 39 F.3d at 916.[3]

18          Upon reflection, the Court concludes that its prior decisions on this question were in error.

19   The error was simple but fundamental:  the Court implied that the jury could find Rohnert Park

20   liable for failing to adequately train its officers even if the officers did not violate the Plaintiffs'

21   constitutional rights.  But a failure-to-train claim requires an underlying violation by the officers.

22

23   ───────────────

24   [3] Plaintiffs also cite *Fagan v. City of Vineland*, 22 F.3d 1283, 1292 (3d Cir. 1994), which held that
     "in a substantive due process case arising out of a police pursuit, an underlying constitutional tort
25   can still exist even if no individual police officer violated the Constitution."  As Rohnert Park
     points out, this case has been criticized by other circuits.  ECF No. 197 at 6 n.1 (citing cases from
26   multiple circuits, including *Trigalet v. City of Tulsa, Okla.*, 239 F.3d 1150, 1155 n.4 (10th Cir.
     2001) (noting disagreement from a later Third Circuit panel)).  Even *Fagan*, however, assumed
27   that the officers' actions must have caused the plaintiff's injuries, even if their state of mind did
     not meet the requisite standard of fault.  22 F.3d at 1292 (holding that the city was liable if it
28   "implemented a policy of inadequate training and thereby caused the officers to conduct the
     pursuit in an unsafe manner and *deprive the plaintiffs of life or liberty*") (emphasis added).

1   Accordingly, to hold the city liable on their municipal failure-to-train claim, the Plaintiffs first had

2   to show that the officers violated their constitutional rights.  That in turn required the jury to find

3   both that the officers were deliberately indifferent and that they caused Branch Wroth's death.

4   Because the jury here concluded that the officers' deliberate indifference was not "the moving

5   force" behind Wroth's death, Plaintiffs failed to establish that their constitutional rights were

6   violated.  Permitting the jury to proceed to the question of municipal liability was thus clear error.

7                           **2.      Remedy**

8          Confronted with this error, the Court must first "attempt to reconcile the jury's findings."

9   *Duk*, 320 F.3d at 1059.  Only if it cannot do so may the Court order a new trial.  *Id.*  Otherwise, it

10  must amend the judgment.  *Id.*

11         The Court begins by noting that the verdict form's causation questions for the ratification

12  and failure-to-train claims were unclear to jurors, prompting a note requesting a definition of

13  "moving force."  ECF No. 193 at 7.  Questions two and seven on the verdict form asked whether

14  the officers' deliberate indifference (question two) and the city's failure to provide adequate

15  training (question seven) were "*the* moving force behind the death of Branch Wroth."  ECF No.

16  158 at 1 (emphasis added).  The use of the definite article may have implied to some jurors that

17  there could be only one moving force behind Wroth's death – i.e., that they could find either that

18  the officers caused his death *or* that the city caused it, but not both.  *Cf. In re Cardelucci*, 285 F.3d

19  1231, 1234-35 (9th Cir. 2002) ("In construing statute, definite article 'the' particularizes the

20  subject which it precedes and is word of limitation as opposed to indefinite or generalizing force

21  'a' or 'an.'") (quoting *Black's Law Dictionary* 1477 (6th ed. 1990)); *United States v. Barron*, 172

22  F.3d 1153, 1163 (9th Cir. 1999) (en banc) ("Congress'[s] use of the definite article 'the,' when

23  referring to 'the judgment,' carries the message that there is one identifiable document.").  Though

24  supported by the use of the definite article "the," this understanding would have been incorrect –

25  under basic tort concepts, causation is established where a defendant's conduct is a substantial

26  factor contributing to the injury, even if it is not the sole contributing factor.  *See* Restatement

27  (First) of Torts § 433 cmt. d (2019) ("There are frequently a number of events each of which is not

28

United States District Court
Northern District of California

only a necessary antecedent to the other's harm, but is also recognizable as having an appreciable effect in bringing it about.").

However, the Court clarified this point in its response to the jury's note, explaining that to find that the officers' deliberate indifference "was the 'moving force' behind the death of Branch Wroth, and/or that the failure of the city of Rohnert Park to provide adequate training was the 'moving force' behind the death of Branch Wroth, you must find that one or both of these things was a substantial factor in causing his death." ECF No. 193 at 7. The Court went on to define "substantial factor" as "a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm." *Id.* This instruction thus resolved any confusion the jury may have had about whether both the officers and the city could have caused Wroth's death.

At the hearing on this motion, however, Plaintiffs drew the Court's attention to another wrinkle in the jury's understanding of the relevant law. Jury Instruction 9.8 gave the following description of the first required element of Plaintiffs' failure-to-train claim: "The acts of David Sittig-Wattson, Sean Huot, Matt Huot, Mike Werle, and/or Eric Matzen deprived Christopher and Marni Wroth of their constitutionally protected liberty interest in companionship and society with Branch Wroth[.]" ECF No. 152 at 24. Jury Instruction 9.32, meanwhile, explained that, in order to show that Plaintiffs' "constitutionally protected liberty interest in companionship and society" with their son was violated, Plaintiffs needed to prove "that David Sittig-Watson, Sean Huot, Matt Huot, Mike Werle, and/or Eric Matzen caused the death of Branch Wroth through deliberate indifference." *Id.* at 26. Because the jury found Rohnert Park liable for failure to train, Plaintiffs argued, they necessarily found that the officers had caused Wroth's death. ECF 201 at 11-12.

Because Plaintiffs did not include this argument in their opposition to Rohnert Park's Rule 59 motion, the Court permitted Rohnert Park to respond in a sur-reply. ECF No. 198. In that brief, Rohnert Park points out that, unlike the ratification instruction (9.7), the failure-to-train instruction does not explicitly refer to instruction 9.32 to explain the underlying constitutional right – and that "when the jury read 9.7 and 9.32 together, they concluded that the officers did not

United States District Court
Northern District of California

cause the death." ECF No. 200 at 6. Had instruction 9.8 also cross-referenced 9.32, Rohnert Park argues, the jury "would have reached the same conclusion" as to the failure-to-train claim. *Id.*

Rohnert Park also points to the portion of instruction 9.8 informing jurors that Plaintiffs did "not also have to prove that the individual officers were deliberately indifferent" in order to hold Rohnert Park liable for failing to train those officers. *Id.*; *see* ECF No. 152 at 24. Because this contradicted 9.32's instruction that Plaintiffs needed to prove that the officers "caused the death of Branch Wroth through deliberate indifference," ECF No. 152 at 26, Rohnert Park argues, the jury could not have relied on 9.32 in finding the city liable for failure to train. ECF No. 200 at 6.

The Court acknowledges the inconsistencies – and, in the case of the deliberate indifference instruction in 9.8, error – in the jury instructions. Combined with the erroneous verdict form, these instructions prevent the Court from reconciling the verdict, even "by exegesis." *See Duk*, 320 F.3d at 1059.

In *El-Hakem v. BJY Inc.*, 415 F.3d 1068 (9th Cir. 2005), the district court faced a similarly inconsistent verdict. In that case, the jury found the CEO of a company liable for creating a hostile work environment but did not find the company itself liable, "even though the evidence showed that [the CEO] was acting in the course and scope of his employment at all pertinent times." *Id.* at 1074. The district court "recognized that its failure to give a requested vicarious liability instruction led to the inconsistent responses from the jury" and reconciled the inconsistency by amending the judgment to reflect the company's vicarious liability. *Id.* The Ninth Circuit upheld this decision, holding that "the jury responses could be reconciled by considering the probable effect on the jury of not having the benefit of the correct instructions." *Id.*; *see also id.* at 1074-75 ("Having concluded that inclusion of the vicarious liability instruction would have inevitably resulted in consistent verdicts of liability against both defendants, the district court did not abuse its discretion by amending the judgment to impose vicarious liability upon BJY.").

Here, there were enough errors in the Court's communication of the law to the jury that it cannot conclude that correcting these errors would have "inevitably resulted" in a consistent

United States District Court
Northern District of California

verdict in favor of Rohnert Park. *See id.* at 1074. In *El-Hakem*, the court's error was limited to one omitted jury instruction. Here, the jury did not have the benefit of an instruction that the city could only be held liable for failing to train its officers if those officers violated the Plaintiffs' rights, and the instructions that it did have contradicted each other, with 9.8 erroneously stating that the jury need not find that the officers were deliberately indifferent to establish this underlying violation, while 9.32 stated the opposite. This jury also had a verdict form that erroneously instructed it to move on to the failure-to-train claim even if it found that the officers did not cause Wroth's death.

To reconcile the *El-Hakem* verdict, all the court had to do was imagine what a reasonable jury would have found had it been given the omitted instruction. Given the various manifestations of the error in this case, the Court cannot speculate as to what a properly instructed jury would have decided. Unlike in *El-Hakem*, such an attempt would not "inevitably" lead to a single outcome and the Court cannot reconcile the verdict.

For the reasons recounted above, the Court is left "with the definite and firm conviction that a mistake has been committed." *Landes*, 833 F.2d at 1372. Not only did the instructions in this case not "fairly and correctly cover[]" the "substance of the applicable law," *Dang*, 422 F.3d at 805 (quoting *Swinton*, 270 F.3d at 802), the verdict form erroneously instructed the jury to move on to the failure-to-train claim on which it held Rohnert Park liable. Because this mistake was not harmless, the Court will grant Rohnert Park's request for a new trial.

## CONCLUSION

Especially in a case such as this, the Court does "not lightly disturb a plausible jury verdict." *Nat'l Prods., Inc. v. Arkon Res., Inc.*, 294 F. Supp. 3d 1041, 1062 (W.D. Wash. 2018). The death of Branch Wroth on May 12, 2017 was, by any measure, an immense tragedy. On a full review of the record and the law, however, the Court concludes that its prior decisions were in error and that Rohnert Park is entitled to have them corrected, "sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995).

United States District Court
Northern District of California

13

1    Accordingly, the Court grants Rohnert Park's motion for a new trial and denies its renewed

2  motion for judgment as a matter of law as moot.

3    The Court sets a case management conference on January 21, 2020.  A joint case

4  management statement is due January 14, 2020.

5    **IT IS SO ORDERED.**

6  Dated:  December 3, 2019



JON S. TIGAR
United States District Judge

United States District Court
Northern District of California