1  RAYMOND J. FULLERTON, ESQ., SBN 219264
   MAGDALENA R. MCQUILLA, ESQ., SBN 307578
2  GEARY, SHEA, O'DONNELL, GRATTAN & MITCHELL, P.C.
   90 South E Street, Suite 300
3  Santa Rosa, California   95404
   Telephone:  (707) 545-1660
4  Facsimile:   (707) 545-1876

5  Attorneys for Defendants
   CITY OF ROHNERT PARK
6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11 | CHRISTOPHER WROTH and MARNI | CASE NO.:  17-cv-05339-JST
   | WROTH, |
12 | | **DEFENDANT CITY OF ROHNERT**
   |          Plaintiffs, | **PARK'S MOTION FOR SUMMARY**
13 | | **JUDGMENT**
   |          v. |
14 | | Date:   September 2, 2020
   | CITY OF ROHNERT PARK, DAVID SITTIG- | Time:  2:00 p.m.
15 | WATTSON, SEAN HUOT, MATT HUOT, | Hon. Jon S. Tigar
   | MIKE WERLE, ERIC MATZEN and DOES 1- | Courtroom 6, 2nd Floor, Oakland
16 | 25, | Trial Date:  November 30, 2020
   | |
17 |          Defendants. |

18

19

20

21

22

23

24

25

LAW OFFICES OF
**Geary,**   26
**Shea,**
**O'donnell** 27
**Grattan &**
**mitchell** 28
**P.C.**

---

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION....................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES........................................................... 2

I.     Introduction ............................................................................................................... 2

II.    Allegations and Procedural History ......................................................................... 2

III.   Summary Judgment Standard.................................................................................... 3

IV.   Legal Discussion ....................................................................................................... 4

        A.     The standard of deliberate indifference applies to municipal liability based on employee training.  In order to meet this heightened standard a plaintiff must establish a pattern of similar constitutional violations sufficient to put the municipality on notice that its training is inadequate, or a complete absence of training in the face of an obvious need....................................... 4

        B.     It is undisputed that there is no pattern of similar constitutional violations by Rohnert Park employees.  Accordingly, the City was not on notice of any deficiency in their officers' training and cannot be found to be deliberately indifferent to any alleged inadequate training as a matter of law............................................................................ 6

        C.     Plaintiffs cannot establish single-incident liability for training because the right at issue was not clearly established.  Accordingly, the need for training was not patently obvious and the City was not deliberately indifferent as a matter of law................................................... 7

        D.     There can be no single-incident liability because the involved officers all had received relevant training on positional asphyxia and avoiding respiratory distress in restraining subjects....................................................... 10

                1.    The City's officers received training on "positional asphyxia" during their Police Academy training ......................... 12

                2.    The officers received training from the City on avoiding respiratory distress in restrained subjects....................... 13

                3.    There is no dispute that Defendant's employees received relevant training, because plaintiffs' own judicial admission establishes that fact ............................. 16

V.     Conclusion................................................................................................................ 17

LAW OFFICES OF
**GEARY,
SHEA,
O'DONNELL
GRATTAN &
MITCHELL
P.C.**

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242, 252 (1986) ........................................................................................... 4

*Arrington-Bey v. City of Bedford Heights, Ohio*
858 F.3d 988, 994-995 (6th Cir. 2017)....................................................................... 8, 9

*Board of County Com'rs of Bryan County v. Brown*
520 U.S. 397, 409 (1997) ................................................................................... 4, 5, 7, 9

*Briley v. City of Hermosa Beach*
No. CV05-8127 AG (SHx), 2008 WL 4443854, at *7 (C.D. Cal. 2008)...................... 9

*Celotex Corp. v. Catrett*
477 U.S. 317, 323 (1986) ......................................................................................... 3, 4

*City of Canton, Ohio v. Harris*
489 U.S. 378, 388 (1989) ........................................................................... 4, 5, 7, 8, 9, 11

*Connick v. Thompson*
563 U.S. 51, 61 (2011) ....................................................................... 5, 6, 7, 10, 11, 16

*Drummond ex rel. Drummond v. City of Anaheim*
343 F.3d 1052 (9th Cir. 2003) .................................................................................. 10

*Farmer v. Brennan*
511 U.S. 825, 841 (1994) ......................................................................................... 4

*Huey v. Honeywell, Inc.*
82 F.3d 327, 333 (9th Cir. 1996) .............................................................................. 12

*Huling v. City of Los Banos*
869 F.Supp.2d. 1139, 1157-1158 (E.D. Cal. 2012)................................................... 8, 9

*Matsushita Electrical Industry Co., Ltd. v. Zenith Radio Corp.*
475 U.S. 574, 586 (1986) ......................................................................................... 4

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*
210 F.3d 1099, 1102 (9th Cir. 2000)....................................................................... 3, 4

*Rockwell Int'l Corp. v. Hanford Atomic Metal Trades Council*
851 F.2d 1208, 1210 (9th Cir. 1988) ........................................................................ 16

*Russell v. Rolfs*
893 F.2d 1033, 1037 (9th Cir.1990).......................................................................... 16

*Szabal v. City of Brooklyn Park, Minn*
486 F.3d 385, 393-394 (8th Cir. 2007)..................................................................... 8

*Tennessee v. Garner*
471 U.S. 1, 11 (1985) ............................................................................................... 8

LAW OFFICES OF
**GEARY,
SHEA,
O'DONNELL
GRATTAN &
MITCHELL
P.C.**

*United States v. Bentson*
947 F.2d 1353, 1356 (9th Cir. 1991) .................................................................................. 16

*Young v. County of Fulton*
160 F.3d 899, 904 (2nd Cir. 1998) ...................................................................................... 8

*Zwalesky v. Manistee County*
749 F.Supp. 815, 820 (W.D. Mich. 1990) ........................................................................... 9

<u>STATUTES</u>

<u>Federal Rules of Civil Procedure</u>

Rule 56 ................................................................................................................................... 1

<u>United States Code</u>

42 USC §1983 ................................................................................................................2, 4, 8

LAW OFFICES OF
**GEARY,
SHEA,
O'DONNELL
GRATTAN &
MITCHELL
P.C.**

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT defendant CITY OF ROHNERT PARK shall, and hereby does, move this Court for summary judgment in its favor on September 2, 2020, before the Honorable Jon S. Tigar, United States District Judge, at the United States District Court, Northern District of California, Courtroom 6, 2nd Floor, 1301 Clay Street, Oakland, California. This motion is brought pursuant to Federal Rules of Civil Procedure, Rule 56, on the basis that plaintiffs cannot establish that the City of Rohnert Park is liable under a failure to train theory, due to an inability to prove deliberate indifference, both because of a lack of notice and evidence of relevant training, as set forth below.

Said motion shall be based on this Notice of Motion, the Memorandum of Points and Authorities below, the Declarations of Raymond J. Fullerton and Aaron Johnson; the depositions and trial testimony of David Sittig-Wattson, Sean Huot, Matthew Huot, Mike Werle, Eric Matzen, Richard Ehle, and Scott Seaman, all filed and served herewith, the factual and legal matters presented to this Court by all parties, on file herein, and any oral argument or further briefing this Court may deem necessary.

DATED:  July 27, 2020                    GEARY, SHEA, O'DONNELL, GRATTAN &
                                         MITCHELL, P.C.


                                         By _____/s/ _Raymond J. Fullerton_____
                                              RAYMOND J. FULLERTON
                                              Attorneys for Defendants
                                              CITY OF ROHNERT PARK

LAW OFFICES OF
**GEARY,
SHEA,
O'DONNELL
GRATTAN &
MITCHELL
P.C.**

- 1 -
Defendant City of Rohnert Park's Motion for Summary Judgment

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

### Introduction

To prevail on a section 1983 training claim, plaintiff must ordinarily establish a pattern of constitutional violations sufficient to put a municipality on notice of a training inadequacy, coupled with the deliberate failure of the municipality to address it.  In this case, there is no evidence of any prior similar violations in the City of Rohnert Park.

In the absence of a pattern, a municipality can only be liable in "narrow circumstances" where it is deliberately indifferent to a patently obvious need for training to avoid highly predictable violations of constitutional rights, *and* plaintiff establishes a complete lack of any training relevant to the subject.   In this case, the constitutional right at issue was not clearly established.  Thus, there was no patently obvious need to train as a matter of law.  Further, the undisputed evidence and plaintiffs' own admissions establish that the officers received training relevant to the alleged violation.  Accordingly, the City is entitled to summary judgment.

## II.

### Allegations and Procedural History

This case arises out of an encounter on May 12, 2017 between the plaintiffs' son, Branch Wroth, and several officers with the Rohnert Park Department of Public Safety that ultimately resulted in Mr. Wroth's death.  Plaintiffs filed suit under 42 U.S.C. § 1983 against the officers and the City of Rohnert Park for deprivation of the familial relationship with their son.  In December 2018, after completing party depositions, plaintiffs amended their complaint to add a case of action against the city for inadequate training.

The city moved for summary judgment in March 2019.  (Dkt. #65.)  The motion was granted in part and denied in part on April 22, 2019.  (Dkt. #78.)  The court granted summary judgment in favor of each officer on the basis of qualified immunity, holding that, at the time of the incident, the applicable precedent "would not have apprised a reasonable officer of the constitutional risk." *Id* at p.22:12–14.  As to plaintiffs' training claim, the court ruled there was a triable issue of fact as to whether the officers were adequately trained with specific training

LAW OFFICES OF
**Geary,
Shea,
O'Donnell
Grattan &
Mitchell
P.C.**

– 2 –
Defendant City of Rohnert Park's Motion for Summary Judgment

"regarding the interaction of restraint techniques and asphyxia." *Id.* at p.24:21–23.

Plaintiffs' *Monell* claims against the city, based on ratification and inadequate training, proceeded to trial in June 2019.  The jury returned a verdict in favor of the city on the ratification cause of action, finding that the officers' actions were not a substantial factor in Mr. Wroth's death.  The jury found in favor of the plaintiffs on the training cause of action.  After post-trial motions, the court ordered a new trial on the training claim.  The city was granted leave to file a second summary judgment motion and the case was set for retrial to commence on November 30, 2020.

The only remaining cause of action is plaintiffs' training claim against the City, first added in their Second Amended Complaint filed on December 7, 2018.  In that pleading, plaintiffs alleged that the officers did not receive adequate training while at the City of Rohnert Park, but that relevant training "is included in all police academies, and in regular ongoing training in law enforcement agencies throughout the State of California and the nation."  (Plaintiffs' Second Amended Complaint ("SAC"), ¶ 29, Dkt. #59.)  On June 11, 2020 plaintiffs were granted leave to file a third amended complaint.  (Dkt. #224.)  In their new pleading, plaintiffs continue to allege "Inadequate Training" but now allege that the relevant training "should be included in all police academies……"  (Plaintiffs' Third Amended Complaint ("TAC") ¶20, Dkt. #214.)

III.

Summary Judgment Standard

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial.  The moving party in such a position need only demonstrate to the court that there is an absence of evidence to support the non-moving party's case.  *Id*. at 325.  It may do so either by producing evidence that negates an essential element of the nonmoving party's claim or by demonstrating "that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

In this case, plaintiffs bear the burden at trial to demonstrate that the City's officers had

LAW OFFICES OF
**Geary,
Shea,
O'donnell
Grattan &
Mitchell
P.C.**

received no training relevant to the alleged constitutional violation.  The defense, however, can point to abundant evidence, presented by both parties, that the officers did receive such training.  By negating an essential element of plaintiffs' claim, the City meets its summary judgment burden.

Once the moving party has met its burden, the burden shifts to the non-moving party to set out specific facts showing a genuine issue for trial.  *Celotex*, *supra*, 477 U.S. at 324.  To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electrical Industry Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence" is insufficient: "there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The nonmoving party must produce enough evidence in support of its claim to create a genuine issue of material fact.  *Nissan Fire*, *supra*, 210 F.3d at 1103.  Failure to do so results in the entry of summary judgment.  *Celotex*, *supra*, 477 U.S. at 322-23.

IV.

Legal Discussion

**A.  The standard of deliberate indifference applies to municipal liability based on employee training.  In order to meet this heightened standard a plaintiff must establish a pattern of similar constitutional violations sufficient to put the municipality on notice that its training is inadequate, or a complete absence of training in the face of an obvious need.**

In a Section 1983 training case, where an employee commits the underlying tort, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."  *Board of County Com'rs of Bryan County v. Brown*, 520 U.S. 397, 409 (1997).  The law provides for municipal liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).  This objective standard of deliberate indifference only permits liability when it is "premised on obviousness or constructive notice."  *Farmer v. Brennan*, 511 U.S. 825, 841 (1994).  Only when a city is on notice that "a particular omission in their training program causes city employees to violate citizens' constitutional rights" can the municipality be found deliberately indifferent for its choice to retain that program."

LAW OFFICES OF
**Geary,
Shea,
O'donnell
Grattan &
Mitchell
P.C.**

1   *Connick v. Thompson,* 563 U.S. 51, 61 (2011).

2       "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal

3   actor disregarded a known or obvious consequence of his action." *Bryan Cty., supra,* 520 U.S. at

4   410.   The Supreme Court has made clear that an essential prerequisite for deliberate indifference

5   on behalf of a municipality is notice: "without notice that a course of training is deficient in a

6   particular respect, decisionmakers can hardly be said to have deliberately chosen a training program

7   that will cause violations of constitutional rights." *Connick, supra,* 563 U.S. at 62.  "A pattern of

8   similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate

9   deliberate indifference for purposes of failure to train." *Connick, supra*, 563 U.S. at 62, citing

10  *Bryan Cty., supra*, 520 U.S. at 409.

11      In evaluating summary judgment, the first inquiry should be whether there is any evidence

12  of a pattern of similar constitutional violations such that the city could be on notice that the officers'

13  training was inadequate.  In this case there is no evidence of *any* prior similar constitutional

14  violations by Rohnert Park officers and plaintiffs make no allegation that the city ignored a pattern

15  of such violations.   Thus, there was no requisite notice and the city cannot be liable for failing to

16  address an alleged training inadequacy.

17      In the absence of a pattern of similar constitutional violations by city employees, plaintiffs

18  must rely on the "narrow range of circumstances" whereby liability can arise for a single incident.

19  Thus, the second inquiry is whether the need for training was so patently obvious that the city can

20  be said to be on notice of the need for training.  In this case, the court has already determined that

21  the right at issue was not clearly established at the time of the incident such that a reasonable officer

22  would know that the conduct could constitute a constitutional violation.  If the right is not clearly

23  established, the city cannot be deliberately indifferent for failing to train to prevent a potential

24  violation.

25      Finally, even if the need for training on a subject is patently obvious, a city can't be

26  deliberately indifferent unless the employee has no training whatsoever on the relevant subject.  "[It

27  will not] suffice to prove that an injury or accident could have been avoided if an officer had more

28  or better training, sufficient to equip him to avoid the particular injury-causing conduct." *Canton,*

LAW OFFICES OF
**Geary,
Shea,
O'Donnell
Grattan &
Mitchell
P.C.**

*supra,* 489 U.S. at 391.  Thus, even if the consequences are patently obvious, a municipality is not deliberately indifferent unless its employees had a "complete absence" of training on the topic. *Connick, supra,* 563 U.S. at 67-68.


    **B.**    **It is undisputed that there is no pattern of similar constitutional violations by Rohnert Park employees.  Accordingly, the City was not on notice of any deficiency in their officers' training and cannot be found to be deliberately indifferent to any alleged inadequate training as a matter of law.**

A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.  It is undisputed that no pattern of similar violations has ever been alleged in this case, and that no evidence was presented to support any prior similar incident.

Plaintiffs have not alleged a pattern of similar constitutional violations.  In December 2018 plaintiffs filed their Second Amended Complaint ("SAC") to allege an inadequate training claim. In June 2020, they were granted leave to file a Third Amended Complaint ("TAC").  (Dkt. #59, #224.)  The TAC, which has yet to be filed but was attached as Exhibit A to plaintiffs' motion to amend, slightly modifies their factual allegations to assert "no training" in some places where they previously alleged inadequate training.  (See Dkt. #214; Dkt. #224, pp. 3:22-4:15.)  But neither the SAC, nor the proposed TAC allege a pattern of similar constitutional violations.

Plaintiffs identified no patterns of similar violations, or even a single similar incident, during discovery or at trial.  In multiple responses to written discovery requests, plaintiffs denied knowledge of any other positional asphyxia-related death involving the City's officers during the previous ten years.  (See Christopher Wroth's and Marni Wroth's responses to defendant's Request for Admissions, Set Two, Request #8, and responses to defendant's Special Interrogatories, Set Two, Interrogatory #13, attached as Exhibits A, B, C, and D to the Declaration of Raymond J. Fullerton ("Fullerton Decl.") filed and served herewith.)

At trial, Deputy Chief Aaron Johnson testified that in his 22 years with the Rohnert Park Department of Public Safety, he had never heard any allegation that the City was responsible for the death of a person due to positional asphyxiation.  (Trial Transcript, p.738:14-18.)  Plaintiffs' follow

LAW OFFICES OF
**Geary,
Shea,
O'Donnell
Grattan &
Mitchell
P.C.**

- 6 -
Defendant City of Rohnert Park's Motion for Summary Judgment

1   up questions to Mr. Johnson did not seek or elicit any contrary evidence.  (Trial Transcript, p.739:9-

2   16.)  And during deliberations over jury instructions during trial, the Court acknowledged that no

3   pattern was shown or alleged.  (Trial Transcript, p.1175:9-10.)  The court's final jury instructions

4   9.8 did not refer to a pattern, and incorporated the "no training" standard without objection from the

5   plaintiffs' counsel.  (Dkt. #152, p.24:19-21; Trial Transcript pp. 1335:2-1337:16.)

6          It is undisputed that no pattern of similar constitutional violations has occurred at the City of

7   Rohnert Park's Department of Public Safety.  Without any prior similar incidents, the city was

8   never put on notice of an inadequacy in their officers' training.  Accordingly, the city can't be

9   deliberately indifferent for failing to address any alleged inadequacy as a matter of law.

10

11          **C.     Plaintiffs cannot establish single-incident liability for training because the
12                   right at issue was not clearly established.  Accordingly, the failure to provide
                     training was not patently obvious and the City was not deliberately
13                   indifferent as a matter of law.**

14          While a pattern of similar constitutional violations is ordinarily a prerequisite to meet the

15   notice requirement for municipal-training liability, the Supreme Court has suggested that, in limited

16   circumstances, a single incident may suffice.  In a single-incident failure to train case, the notice

17   requirement is met only when it is "patently obvious" that constitutional violations would be the

18   "highly predictable consequence" of a municipality's failure to train on a particular topic.  *Connick,*

19   *supra,* 563 at 63-64.  The "highly predicable" violation of constitutional rights must result from an

20   indifference to the "obvious consequence" of the municipal decision not to train and relate to a

21   specific constitutional right:

22          In leaving open in *Canton* the possibility that a plaintiff might succeed in carrying
            a failure-to-train claim without showing a pattern of constitutional violations, we
23          simply hypothesized that, in a narrow range of circumstances, a violation of
            federal rights may be a highly predictable consequence of a failure to equip law
24          enforcement officers with specific tools to handle recurring situations.  The
            likelihood that the situation will recur and the predictability that an officer lacking
25          specific tools to handle that situation will violate citizens' rights could justify a
            finding that policymakers' decision not to train the officer reflected "deliberate
26          indifference" to the obvious consequences of the policymakers' choice – namely,
            a violation of a specific constitutional right.

27

28   *Bryan Cty., supra,* 520 U.S. at 409.

LAW OFFICES OF
**Geary,
Shea,
O'Donnell
Grattan &
Mitchell
P.C.**

In this case, the officers were granted qualified immunity because the specific constitutional right was not clearly established.  (Dkt. #78, p.22).  Without a clearly established constitutional right, there can be no highly predictable violation.  Without a clearly-established right, there can be no "patently obvious" need to train.  And without a clearly-established right, there is no "obvious consequences" for a policymaker to be deliberately indifferent to.  By definition, a reasonable officer would not know that the conduct at issue could be a constitutional violation.  Thus, the city did not have the requisite notice.

The basis of single-incident liability derives from a hypothetical within a footnote in *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, fn10 (1989).  There, the Supreme Court gave an example of what could be a "patently obvious" need: the need to train armed officers on the use of deadly force.  *Canton, supra*, 489 U.S. at 390, fn10.  Such limits had been clarified four years earlier, in *Tennessee v. Garner*, 471 U.S. 1, 11 (1985), which addressed the use of deadly force on fleeing subjects.  The *Canton* court cited the *Garner* decision in its explanation of why the need to train on the use of deadly force was "patently obvious."  *Canton*, *supra*, 489 U.S. at 390, fn10.  According to *Canton*, in light of the clear authority afforded by the *Garner* decision, sending police officers armed with guns into the public to apprehend fleeing subjects without training on the constitutional limits of the use of their weapons would so patently obviously cause constitutional violations that a municipality could be on notice even without a pattern or history of similar violations.  *Ibid*.  The constitutional right cited in the *Canton* hypothetical had been clearly established by *Garner*.

In contrast to the *Canton* hypothetical, the need for training cannot be patently obvious in circumstances where the underlying right is not clearly established.  Where the contours of the right are not clearly established, the critical notice element is absent and there can be no deliberate indifference.  *Huling v. City of Los Banos*, 869 F.Supp.2d 1139, 1157-1158 (E.D. Cal. 2012); *Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 994-995 (6th Cir. 2017); *Szabal v. City of Brooklyn Park, Minn*, 486 F.3d 385, 393-394 (8th Cir. 2007); *Young v. County of Fulton*, 160 F.3d 899, 904 (2nd Cir. 1998).

In *Huling*, *supra*, the court considered a section 1983 claim based on the constitutional right

LAW OFFICES OF
**Geary,
Shea,
O'Donnell
Grattan &
Mitchell
P.C.**

- 8 -
Defendant City of Rohnert Park's Motion for Summary Judgment

1    to informational privacy. The plaintiff brought suit against individual defendants for violation of

2    the right, and against the City of Los Banos for failure to train. The court determined that the

3    contours of the right were not clearly established and dismissed the claims against the individual

4    defendants on qualified immunity grounds. 869 F.Supp.2d at 1155. In evaluating the failure-to-

5    train claim, the court applied the deliberate indifference standard established by the Supreme Court

6    in *City of Canton, supra*, 489 U.S. 378. Given this high standard, the court concluded that liability

7    could not attach unless the right at issue was clearly established such that the city would be

8    expected to know that training was necessary:

9           This is the only logical conclusion in a failure to train case. How can a
            municipality be expected to train officers to avoid violating a right the outlines of
10          which cannot be reasonably discerned from existing precedent?

11   *Huling*, *supra*, 869 F.Supp.2d at 1158. See also *Zwalesky v. Manistee County*, 749 F.Supp. 815, 820

12   (W.D. Mich. 1990) ("[I]t would be irrational to hold that a municipality has shown deliberate

13   indifference to the rights of citizens by failing to train its personnel when its officers have violated

14   no clearly established right."); *Briley v. City of Hermosa Beach*, No. CV05-8127 AG (SHx), 2008

15   WL 4443854, at *7 (C.D. Cal. 2008).

16          Similarly, in *Arrington-Bey, supra*, 858 F.3d at 995, the Sixth Circuit considered a training

17   claim arising out of an in-custody death. The court reversed the trial court denial of summary

18   judgment and found that the individual officers were entitled to qualified immunity. Having

19   determined that the right at issue was not clearly established, the court turned to the deliberate-

20   indifference standard applicable to the training claim and noted the Supreme Court's requirement

21   that there be an "obvious potential" for a constitutional violation. *Id*. at 995, citing *Board of County*

22   *Com'rs of Bryan County v. Brown*, 520 U.S. 397, 409 (1997). In the absence of a clearly

23   established right, the court held that this requirement is not met and there can be no deliberate

24   indifference:

25          "[O]bvious potential for such a violation" has two elements: It must be obvious
            that the failure to train will lead to certain conduct, *and* it must be obvious (*i.e.*,
26          clearly established) that the conduct will violate constitutional rights.

27   *Arrington-Bey, supra*, 858 F.3d at 995 (emphasis original). Requiring a right to be clearly

28   established as a prerequisite to a finding of deliberate indifference does not extend qualified

LAW OFFICES OF
**Geary,
Shea,
O'Donnell
Grattan &
Mitchell
P.C.**

immunity to municipalities; rather it simply follows the requirements established by the Supreme Court "that deliberate indifference in fact be deliberate." *Id*. at 995, citing *Szabla*, *supra*, 486 F.3d at 394.  To hold otherwise would improperly convert a failure-to-train claim into *respondent superior* liability, imposing liability without regard to fault in contravention of *Monell*.  *Ibid*.

In the instant case, the court has already dismissed the individual officers from the lawsuit based on qualified immunity.  (See Order Granting in Part and Denying in Part Motion for Summary Judgment, Dkt. #78, p.22.)  The court based its grant of qualified immunity on its conclusion that the right was not clearly established at the time of the incident.  (Dkt. #78, pp. 20:21-22:16.)  Specifically, the court found that the only legal decision cited by plaintiffs to support their argument that the right was clearly defined did not, in fact, support that position.  (Dkt. #78, p.21:13-24, discussing *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003).)

Unless that right is clearly defined, a municipality cannot be on notice that the right will obviously be violated without relevant training.  The court has already found that the right at issue in this case was not clearly established.  As such, there was no patently obvious need to train.  The City cannot be found deliberately indifferent in this single-incident training claim, because it was not on notice of the need for such training.

**D.     There can be no single-incident liability because the involved officers all had received relevant training on positional asphyxia and avoiding respiratory distress in restrained subjects.**

In a single-incident failure to train claim, even if constitutional violations are a highly predictable consequence of a failure to train, a municipality cannot be found deliberately indifferent unless the tortfeasor employees had received *no training*.  *Connick*, *supra*, 563 U.S. at 67—68. It is not enough to show that the training was inadequate or could have been improved in some way; a plaintiff must establish that the offending employees had an "utter lack" of training.  *Ibid*. Because an employee with some training does not present the same "highly predictable constitutional danger" as an employee with no training, a municipality in such a circumstance is not on notice that without training a constitutional violation will obviously occur.  *Id*. at 67.

LAW OFFICES OF
**Geary,
Shea,
O'Donnell
Grattan &
Mitchell
P.C.**

Further, in a single-incident training case, a plaintiff must prove of a complete lack of training on the subject from *any* source, including training received at the police academy.  (See prefatory comments to Draft Jury Instructions, Dkt. #145 p.1:15-17; Court's Docket text for ECF Dkt. #147; Jury Instruction 9.8, Dkt. #152, p.24:19-21.)  It is not enough to show that the injury could have been avoided with better or more training.  *Connick v. Thompson*, supra, 563 U.S. at 67-68; *Canton*, *supra* 489 U.S. at 391.

In *Connick*, *supra*, 563 U.S. 51, the Supreme Court considered a Brady violation related to lab results without any evidence of prior similar violations.  The court distinguished the alleged Brady violation from the hypothetical single-incident liability it previously referenced in *City of Canton* by noting that "the *Canton* hypothetical assumes that the armed officers have no knowledge at all of the constitutional limits on the use of deadly force."  *Id*. at 67.  In contrast, the Brady violations were *not* a "highly predictable consequence" of a District Attorney's office's failure to specifically train staff on Brady standards, because attorneys are trained before they enter the profession to apply legal rules, and their professional legal training continues even after they are licensed.  *Connick*, *supra*, 563 U.S. at 64-65.  A lack of formal training on Brady was not seen by the Supreme Court to be equivalent to the "complete absence of legal training" contemplated in the *Canton* decision — it was merely a form of additional training, which does not suffice to establish liability.  *Id*. at 68.

Plaintiffs' case has always been based on a theory of "inadequate training," rather than "no training."  Plaintiffs made specific allegations and presented affirmative evidence during discovery and at trial that all police officers receive mandatory training on positional asphyxia during police academy.  The evidence plaintiffs presented, through their police procedures expert, through training records admitted at trial, and in testimony elicited from the officers, further confirmed that the City provides ongoing training on the interrelated topics of positional asphyxia, the recovery position, and respiratory distress in prone restraint.  The defense also presented evidence that the officers received training in positional asphyxia and avoiding respiratory distress during prone restraint.  It is thus undisputed that the officers received some relevant training.  According, in the absence of any evidence of a pattern of prior constitutional violations, the city is not liable.

LAW OFFICES OF
**Geary,
Shea,
O'Donnell
Grattan &
Mitchell
P.C.**

- 11 -

1. **The City's officers received training on "positional asphyxia" during their Police Academy training.**

It is undisputed that all police officers in California receive training on positional asphyxia during police academy.  The City of Rohnert Park only hires POST-certified police academy graduates as public safety officers, and each of the involved officers graduated from a POST-certified police academy.  (Aaron Johnson Declaration ("Johnson Decl.") ¶6).  Every POST-certified police academy in California provides the same established curriculum, organized into 41 Learning Domains.  (Trial Transcript, Scott Seaman, pp. 1241:4-9; 1244:19-23; Deposition transcript of Richard Ehle, p.35:11-14, attached to Fullerton Decl. as Exhibit E.)  Several of those Learning Domains train on positional asphyxia.  (Trial Transcript, Seaman, pp. 1245:13–1246:15; 1248:13–19.)

In discovery responses, plaintiffs stated that positional asphyxia is addressed in police academy training.  (See plaintiffs' responses to Defendant's Special Interrogatories #1 and #7, served on behalf of Marni Wroth, and on behalf of Christopher Wroth, attached to Fullerton Decl. as Exhibits C and D.)  Plaintiffs' police practices expert, Richard Ehle, confirmed that several learning domains at the POST basic academy instruct officers on positional asphyxia.  (Trial Transcript, pp. 941:19–942:22.)  And plaintiffs alleged as much in their Second Amended Complaint.  (See plaintiffs' SAC ¶29.)  Those allegations, even if not taken as dispositive judicial admissions, serve as "competent evidence of the facts stated."  *Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996).

Plaintiffs have never offered any evidence to suggest that these officers failed to receive any POST training on positional asphyxia.  In fact, plaintiffs' police practices expert, Richard Ehle, testified that, based upon his review of the officers' training records, nothing indicated that any of the officers had not received the required POST-mandated training that covered positional asphyxia.  (Trial Transcript, pp. 920:2–922:8.)  Defendant's police practices expert, Scott Seaman, also reviewed the officers' training records and confirmed that they had all attended POST certified police academies that taught positional asphyxia as part of their POST learning domain curriculum.  (Trial Transcript, p.1248:10-19.)

LAW OFFICES OF
**Geary,
Shea,
O'Donnell
Grattan &
Mitchell
P.C.**

The officers each testified to their attendance at POST-certified police academies, and several recalled positional asphyxia training.  Officers Sean Huot and Matthew Huot, the most recent police academy graduates, testified to receiving training on positional asphyxia during police academy.  (Trial Transcript, pp. 422:5—423:3; 495:10-19.)  Officers David Sittig-Wattson and Eric Matzen both attended a POST-certified police academy, and remembered receiving some training on positional asphyxia as part of different trainings throughout their career, but could not remember specifics.  (Deposition transcript of David Sittig-Wattson, pp. 18:15-23, 118:13-119:19, attached as Exhibit F to Fullerton Decl.; Trial Transcript, Matzen, pp. 616:8-16, 636:20-637:22.)  Michael Werle attended basic POST academy and acknowledged that most skills a police officer will use in the field are touched upon at police academy. (Trial Transcript, Werle, pp. 682:17-19, 717:13-16.)

Abundant evidence exists that these officers attended a POST-certified police academy and therefore received at least some training on positional asphyxia.  This evidence was presented by both sides, and has not been disputed.  In the face of this undisputed evidence, plaintiffs' claims for municipal training liability fails.

### 2. The officers received training from the City on avoiding respiratory distress in restrained subjects.

The City trains its officers to monitor restrained persons for respiratory distress, to place them in the recovery position if respiratory distress occurs or as soon as a maximum restraint is applied, and to avoid placing a restrained person in a prone position for an extended period of time. These facts are supported by the testimony of plaintiffs' police practices expert, Richard Ehle, the testimony of the involved officers and other City staff, the officers' training records and POST standards for that training, the City's policies, and the testimony of defendant's police practices expert, Scott Seaman.  There is no dispute of material fact regarding whether or not this training is provided by the City or whether the four most-senior of the five involved officers had received the training at the time of the incident.

"Positional asphyxia" was defined by plaintiffs' police practices expert Richard Ehle as a restriction of breathing caused by body positioning or pressure.  (Trial Transcript, pp. 881:25–882:10.)  He testified that police policies and procedures began to address positional asphyxia in the

LAW OFFICES OF
**Geary,
Shea,
O'Donnell
Grattan &
Mitchell
P.C.**

- 13 -
Defendant City of Rohnert Park's Motion for Summary Judgment

early 80's, after several incidents where individuals were injured after being transported in a "facedown, prone, handcuffed position."  (Trial Transcript, p.882:12–22.)  He explained that to avoid positional asphyxia, officers are trained to monitor arrestees.  (Trial Transcript, pp. 940:24–941:7, 942:8–16.)  The proper action to take if a restrained subject begins to experience respiratory distress is to place the person into the "recovery position, which takes the pressure off his front and his chest."  (Trial Transcript, Ehle, p.944:6–17.)  The recovery position is generally recognized and is quoted throughout POST training.  (Trial Transcript, Ehle, p.944:14–17.)

While the City does not use the term "positional asphyxia," its officers are nonetheless trained regarding the potential for respiratory distress in prone restraint.  These issues are taught in the Rohnert Park Department of Public Safety "Defensive Tactics" courses taught at the city. (Johnson Decl., ¶8; Trial Transcript, Johnson, pp. 722:16–723:15; Trial Transcript, Seaman, pp. 1249:24–1251:8.)  This training focuses on preventing injury to a restrained person, and how to be aware of body positioning after handcuffs are applied and before transporting the restrained individual.  (Johnson Decl. ¶8; Trial Transcript, Johnson, pp. 722:9–728:2; Trial Transcript, Seaman, p.1250:13–21.)  The training includes the need to monitor a subject for respiratory distress when they are restrained in a prone position, or as they are being restrained.  (Johnson Decl. ¶8; Trial Transcript, Johnson, pp. 724:20–725:18, 726:15–24.)  The City's officers are also trained to place a restrained person in the recovery position if they are experiencing respiratory distress or once they are fully restrained.  (Johnson Decl. ¶8; Trial Transcript, Johnson, p.724:6–12; Trial Transcript, Seaman, pp. 1250:21–1251:8, 1258:14–22.)  Despite the City not using the term "positional asphyxia," the concepts taught in the City's Defensive Tactics training have the same focus.  (Johnson Decl. ¶8; Trial Transcript, Johnson, pp. 722:9–728:2; Trial Transcript, Matzen, p.654:17–24; Trial Transcript, Ehle, pp. 949:1–950:8.)

The four most-senior of the five involved officers had received this training from the City at the time of the incident.  POST requires that police officers in California receive ongoing training, with at least fourteen hours of "Perishable Skills" training, including four hours in Arrest Techniques, every two years.  (Johnson Decl. ¶7.)  The City's Defensive Tactics training satisfies POST's Arrest Techniques training requirement, and all of the involved officers were in

LAW OFFICES OF
**GEARY,
SHEA,
O'DONNELL
GRATTAN &
MITCHELL
P.C.**

- 14 -
Defendant City of Rohnert Park's Motion for Summary Judgment

1  compliance with POST's training mandates at the time of the incident.  (Johnson Decl. ¶¶ 7, 15;

2  Trial Transcript, Seaman, pp. 1242:5–1244:6; Trial Transcript, Ehle, pp. 919:17–922:8.)  Officer

3  David Wattson attended the City's Defensive Tactics course on February 13, 2014, June 25, 2015,

4  and March 16, 2017.  (Johnson Decl. ¶9, Exhibit A; Trial Exhibit #9.)  In addition to attending the

5  City's Defensive Tactics course, Officer Wattson received training to become a POST Defensive

6  Tactics instructor on December 16, 2016.  (Johnson Decl. ¶10, Exhibit A; Trial Exhibit #9.)

7  Sergeant Eric Matzen attended the City's Defensive Tactics course on February 20, 2014, June 25,

8  2015, and March 23, 2017.  (Johnson Decl. ¶11, Exhibit C; Trial Exhibit #9.)  Officer Mike Werle

9  attended the City's Defensive Tactics course on February 13, 2014 and June 11, 2015.  (Johnson

10  Decl. ¶12, Exhibit D; Trial Exhibit #9.)  Officer Matthew Huot completed the City's Defensive

11  Tactics course on March 16, 2017, having been hired by the Department in January of 2017.

12  (Johnson Decl. ¶13, Exhibit E; Trial Exhibit #9.)

13  Because Sean Huot had only graduated from the Police Academy in August 2016, he was

14  not yet subject to POST's two-year reporting requirement at the time of the May 2017 incident, and

15  had not yet taken the course provided by the Department.  (Johnson Decl. ¶14, Exhibit B; Trial

16  Exhibit #9.)  However, he had received relevant training in the police academy within the previous

17  year.  (Johnson Decl. ¶14; Trial Transcript, Sean Huot, pp. 422:5–423:3.)  Also, Rohnert Park

18  Department of Public Safety Policy #306 discusses monitoring restrained subjects and not leaving

19  them in the prone position for an extended period of time, as this could restrict their ability to

20  breathe.  (Johnson Decl. ¶16, Exhibit F.)

21  The testimony of the involved officers highlighted some of the relevant training they

22  received at the Department.  Officer Matzen testified that he had received training in positional

23  asphyxia and related concepts at the Department, in Defensive Tactics training.  (Trial Transcript,

24  pp. 635:20–25, 645:8–13, 654:17–24, 658:12–659:4.)  That training included putting a restrained

25  person on their side, in the recovery position, "to facilitate breathing."  (Trial Transcript, Matzen,

26  pp. 636:7–637:19, 658:12–659:4.)  The training instructed him that a person who is handcuffed in a

27  facedown, prone position is at risk for positional asphyxia, and that another risk factor would be to

28  put weight on such a restrained person's back.  (Trial Transcript, Matzen, pp. 638:17–21, 639:18-

LAW OFFICES OF
**GEARY,
SHEA,
O'DONNELL
GRATTAN &
MITCHELL
P.C.**

21, 654:17–24, 658:12–659:4.)  Matthew Huot testified that he was trained on the recovery position, to put someone on their side if they have trouble breathing.  (Trial Transcript, pp. 486:14–487:8.)  Officer Werle testified at his deposition that he was trained to always monitor a person being taken into custody.  (See deposition transcript of Mike Werle, pp. 65:18–66:3, attached as Exhibit G to Fullerton Decl.)  Officer Wattson testified that he was trained by the City to put a person into the recovery position, either when they were in respiratory distress or after maximum restraints were in place, due to the potential for breathing problems to arise from prolonged pressure on the person's chest.  (Trial transcript, pp. 345:23–346:23, 360:22–361:7.)

Even Richard Ehle, plaintiffs' police practices expert, confirmed that despite not using the words "positional asphyxia," the City does train its officers to put a person on their side and into the recovery position after they're restrained.  (Trial transcript, pp. 949:1–950:8.)  He also acknowledged that the City's policies discuss the recovery position.  (Trial transcript, p.949:5–11; Deposition transcript of Richard Ehle, pp. 207:8–208:12, attached as Exhibit E to Fullerton Decl.) In fact, Mr. Ehle's opinion was never that the officers did not receive relevant training, but that the training was ineffective.  (Trial transcript, p.949:12–14.)  But inadequacy is not the standard in a single-incident case.  (*See Connick*, *supra*, 563 U.S. at 67-68.)

### 3. There is no dispute that Defendant's employees received relevant training, because plaintiffs' own judicial admission establishes that fact.

A party is prohibited from changing its position in a lawsuit under the equitable doctrine of judicial estoppel when such a change has an adverse impact on the proceedings.  *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990).  The doctrine "focuses exclusively on preventing the use of inconsistent assertions that would result in an affront to judicial dignity and a means of obtaining unfair advantage."  *Rockwell Int'l Corp. v. Hanford Atomic Metal Trades Council*, 851 F.2d 1208, 1210 (9th Cir. 1988) (internal punctuation and citations omitted).  An attorney's oral statements in open court are judicial admissions that bind his client.  *United States v. Bentson*, 947 F.2d 1353, 1356 (9th Cir. 1991)

Plaintiffs' factual basis for their inadequate training claim always acknowledged that the City's officers had received at least some minimal training at the police academy, and their

LAW OFFICES OF
**GEARY,
SHEA,
O'DONNELL
GRATTAN &
MITCHELL
P.C.**

counsel's representations to the court reflected as much.  At the pre-trial conference, upon direct inquiry from the court, plaintiffs' counsel made specific representations to the court that confirmed that positional asphyxia is taught in the POST Academy:

> **The Court:** The motion states on page 5 that there are POST learning domains relative to positional asphyxia.  Is that true?
>
> **Mr. Schwaiger:**  That is correct, your Honor.
>
> **The Court:**  And is it your view that those - - so I'll come back to my question because now we know you think the training was inadequate and we know there are POST learning domains on positional asphyxia.  Are those learning domains, if given, inadequate?
>
> **Mr. Schwaiger:**  . . . The learning domains are what is instructed on in the academy, not the training the officers receive from their department.
>
> The Learning Domain 34 states that people can suffocate from positional asphyxia and a long list of other items that could cause suffocation.
>
> Learning Domain 35 says that each officer has to be completely familiar with their policies - - with their departments policies on positional asphyxia.

(See Transcript of 5/31/19 Pretrial Conference, pp. 71:20–72:14 attached as Exhibit H to Fullerton Decl.)  This judicial admission acknowledges that POST training covers the relevant topic.  In the face of this judicial admission, and the undisputed fact that all of the officers were trained in POST-certified police academies, plaintiffs cannot establish the essential deliberate-indifference element for a single-incident training claim.  Summary judgment should be granted.

V.

Conclusion

A municipality cannot be expected to train for a situation that a reasonable officer would not recognize as a violation of a clearly established right.  Because the right at issue was not clearly established, Rohnert Park is not liable as a matter of law.  Further, the plaintiffs admit, and the undisputed facts establish, that the officers did receive relevant training in the police academy and after becoming sworn officers.  In a single-incident case, any training at all is constitutionally sufficient.  Since plaintiffs cannot establish a pattern of similar constitutional violations by Rohnert park employees, plaintiffs cannot establish that the city was deliberately indifferent.  Summary

//

LAW OFFICES OF
**Geary,
Shea,
O'Donnell
Grattan &
Mitchell
P.C.**

judgment should be granted.

Dated:  July 27, 2020                    GEARY, SHEA, O'DONNELL, GRATTAN &
                                        MITCHELL, P.C.


                                        By     /s/ Raymond J. Fullerton
                                               RAYMOND J. FULLERTON
                                               Attorneys for Defendants
                                               CITY OF ROHNERT PARK

LAW OFFICES OF
**Geary,
Shea,
O'Donnell
Grattan &
Mitchell
P.C.**

- 18 -
Defendant City of Rohnert Park's Motion for Summary Judgment